IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BEVERLY DIGGS,** *Pro Se* | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil No. **PJM 15-2378** |
| | * | |
| **JOHN KELLY, SECRETARY OF U.S. DEPARTMENT OF HOMELAND SECURITY** | * | |
| | * | |
| | * | |
| Defendant | * | |

## MEMORANDUM OPINION

*Pro Se* plaintiff Beverly Diggs brings suit against John Kelly, Secretary of the U.S. Department of Homeland Security,[1] alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* ("RA");[2] and the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"); in connection with her employment at the Federal Emergency Management Agency ("FEMA"), a division of the U.S. Department of Homeland Security. Diggs alleges that she was discriminated against in various ways in her employment as a result of her race (African-American), sex (female), and disability (ankle injury), and that she suffered harassment (non-sexual), and was retaliated against as a result of having complained of discrimination.

Secretary Kelly has filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No 12. For the reasons that follow, Kelly's Motion to Dismiss, will be

---

[1] This case is docketed as *Beverly Diggs v. Jeh Johnson.* Johnson resigned as Secretary of the U.S. Department of Homeland Security effective January 20, 2017 and John Kelly was sworn in that same day. Accordingly, the case will hereafter be referred to as *Diggs v. Kelly.*
[2] On a form filed with her Complaint, Diggs checked a box indicating that she intended to allege violations of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et. seq.* ECF No. 1-2. However, "[t]he exclusive remedy for federal employees alleging that federal agencies engaged in disability discrimination is Section 501 of the Rehabilitation Act." *Rand v. Geithner*, 609 F. Supp. 2d 97, 100 (D.D.C. 2009). The Court therefore construes her allegations as alleged violations under the Rehabilitation Act.

**GRANTED** with respect to Diggs' claims of race discrimination, sex discrimination and harassment under Title VII, her claims under the FMLA, and her claims under the RA. Kelly's Motion for Summary Judgment, will be **GRANTED** with respect to Diggs' retaliation claims under Title VII**.**

## I.     FACTUAL AND PROCEDURAL HISTORY

Diggs began work as a Duplicate Mail Operator at FEMA's National Processing Services Center ("NPSC") in Hyattsville, Maryland in October 1999. ECF No. 12-2 at 85. In April 2006, she suffered an injury at work when she tripped in the mail room and injured her ankle. ECF No. 12-2 at 76. According to Diggs, her request for leave to obtain surgery was denied, as was her request for leave under the FMLA. ECF No. 1 at 3. She also filed a claim for workers compensation with the U.S. Department of Labor as a result of the accident. ECF No. 12-4 at 24.

In 2008, FEMA began the process of transferring its mail room operations to a private sector company and offered its employees the option of transferring to a Human Services Specialist position, resigning, or being terminated. ECF No. 12-5 at 242-43.  In May 2008, Diggs, along with three others, transferred. ECF No. 12-2 at 91. Her pay and work hours remained the same after the transfer. ECF No. 12-4 at 130.

On July 14, 2008, Diggs filed a complaint with the EEOC ("Complaint 1") citing five incidents between March and May 2008 that purportedly took place <u>before</u> her transfer. *See* ECF No. 12-2 at 23. She alleged that (1) her first-line supervisor denied her training that would have allowed her to track the flow of mail on a spreadsheet, a function then allegedly performed by two of Diggs' colleagues, (2) her first-line supervisor added comments to her leave slips, (3) her first and third-line supervisors transferred her, (4) her first line supervisor impersonated her and

called the Office of Workers' Compensation Programs at the U.S. Department of Labor to inquire about her disability, and (5) someone misappropriated her identity in order to attend a training event. ECF No. 1-2 at 2-3.

In August 2008, Diggs met with a representative of the Equal Employment Opportunity office at FEMA about further occurrences that purportedly took place after her transfer. ECF No. 12-3 at 47. On March 18, 2009, she filed a second complaint ("Complaint 2"), which she subsequently amended in June 2009 and October 2009, alleging ten additional instances of discrimination, harassment, or reprisal. *Id.* at 67-70. These pertained to (1) remedial actions related to her attendance at work, including instances where her managers supposedly inappropriately charged her with being Absent Without Leave ("AWOL"), extended a leave restriction and issued verbal and written warnings about her tardiness; (2) suspended her for inappropriate conduct in August 2008; and (3) ultimately, on June 2, 2009, terminated her employment for failure to follow directions. ECF No. 1-2 at 3-4.  Diggs also alleged generalized harassment and retaliation beginning in or around February 2009. *Id.* at 4.

In her Notice of Termination, Josephine Elliott, Diggs' supervisor, charged Diggs with failure to follow instructions, citing four incidents when she refused to meet with managers, left meetings early, or raised her voice at managers or colleagues. ECF No. 12-3 at 656-57. The Notice also cited previous warnings to Diggs and previous reprimands, finding Diggs' behavior to be in violation of the Standards of Conduct for Federal Employees as well the NPSC Employee Handbook. *Id.* at 657.

The Equal Employment Opportunity office at FEMA investigated Diggs' Complaints 1 and 2 separately and sent reports of its investigations to Diggs.  Diggs timely requested a hearing

before an Equal Employment Opportunity Commission ("EEOC") Administrative Law Judge ("ALJ"), who consolidated and heard the two cases, ECF No 1-2 at 5, and eventually found that Diggs had failed to prove that Kelly (i.e. his subordinates) had, in any way, subjected her to illegal discrimination, ECF No. 1-2 at 5. On May 7, 2015, the EEOC issued a final order adopting the ALJ's findings. *Id*.

Diggs filed the present suit on August 11, 2015.

## II.   MOTION TO DISMISS

Kelly argues first that Diggs' lawsuit should be dismissed because (a) Diggs failed to exhaust her administrative remedies, (b) the suit was not timely filed, (c) the claims under the FMLA are time-barred, and (d) Diggs has failed to state a claim with respect to her claims of race discrimination, sex discrimination and hostile work environment under Title VII or disability discrimination under the RA.

*a. Failure to Exhaust Administrative Remedies*

A party claiming discrimination in employment is required to have exhausted her administrative remedies pursuant to Title VII in order for the court to have subject matter jurisdiction over the claims on appeal from the EEOC. 42 U.S.C. § 2000e–16(c). See *Labor v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006). On appeal, the party may advance claims that are "broader than the language of the EEOC charge [only] [i]f a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000).

Before the Court, Diggs brings several new claims that were not presented to the EEOC, including claims that (1) she was promised a promotion to an GS-7 position when she was transferred, but never received it, (2) management ridiculed her speech during a training event, and (3) she was unable to cooperate with the EEO investigator with respect to Complaint 1 because she had recently had a mild heart attack. ECF No. 1 at 5.

The Court finds these claims to be insufficiently related to the claims that were before the EEOC and will therefore **DISMISS** them for lack of subject matter jurisdiction.

    b. *Timeliness of Title VII Claims*

A complainant has ninety days to file suit in Federal court after receiving notice of her right to sue from the EEOC. 42 U.S.C. § 2000e-5(f)(1). The Fourth Circuit has adopted a "flexible rule" allowing courts to determine that equitable tolling is appropriate if there was "not sufficient time within which" the plaintiff could file a lawsuit in Federal court before the ninety day limit expired. *Harvey v. City of New Bern Police Dep't.*, 813 F.2d 652, 654 (4th Cir. 1987).

In this case, the EEOC's decision was dated May 7, 2015, and the certificate of service indicates that it was mailed that same day. ECF No. 1-2 at 7, 8. The certificate of service also contains the following notation: "For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed." ECF No. 1-2 at 8.[3] The ninety day period for Diggs to file her federal lawsuit, then, would presumably have begun on May 12, 2015 and ended on August 10, 2015.

Diggs filed her appeal on August 11, 2015, 91 days after she was to have received her decision from the EEOC. ECF No. 1.

---

[3] It does not appear that this five day presumption set forth by the EEOC has any legal force. *See Nguyen v. Inova Alexandria Hosp.,* 187 F.3d 630 (4th Cir. 1999)("we have held that delivery of a notice of right to sue triggered the limitations period…if the actual date of receipt is confirmed by evidence, that date governs…[i]f the date is unknown, however, it is presumed that service by regular mail is received within three days pursuant to Rule 6(e) of the Federal Rules.").

The Court will assume, without deciding, that equitable tolling is appropriate in this case and that Diggs' filing in this Court was timely.

    *c.  Timeliness of FMLA Claims*

Kelly argues that Diggs' claim for relief under the FMLA is plainly untimely.[4] The statute of limitations for a violation of the FMLA is two years "after the date of the last event constituting the alleged violation for which the action is brought," unless the violation was willful, in which case the statute of limitations is three years. 29 U.S.C. § 2617 (c).

In her Complaint, Diggs avers that she had an accident at work in April 2006, during which she tore ligaments in her ankle and as a result of which she was put in a cast and underwent physical therapy. ECF No. 1 at 3. Her doctor recommended surgery. *Id.* She alleges, however, that her request for leave under the FMLA was denied. *Id.*

Limitations as to this claim clearly began to run as of April 2006, but Diggs did not file the present suit until August 11, 2015, more than nine years later, far beyond the period of limitations.

The Motion to Dismiss will therefore be **GRANTED** as to Diggs' FMLA Claims.

---

[4] The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C § 2612 (a)(1)(D). A "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611 (11).

> d. *Sufficiency of Claims of Sex Discrimination, Racial Discrimination, Hostile Work Environment, and Disability Discrimination.*

Kelly submits that Diggs' Complaint has failed to state a claim with respect to her allegations of sex discrimination, race discrimination, harassment and disability discrimination.

> i. *Sex Discrimination and Race Discrimination*

In order to bring a claim under Title VII, absent direct evidence of discrimination, a plaintiff may establish a *prima facie* case by introducing evidence to show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 598 (D. Md. 2011), aff'd, 465 F. App'x 274 (4th Cir. 2012)(quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir.2010)). If the plaintiff establishes these *prima facie* elements, the burden then shifts to the employer to demonstrate a legitimate non-discriminatory reason for the adverse action, and thereafter, if the employer does so, the burden shifts back to the employee to show that the proffered explanation is a pretext for discrimination. *Id.*

To prevail on a motion to dismiss, Diggs need not plead facts sufficient to support each element of a *prima facie* case. *Swierkiewicz v. Sorema*, 534 U.S. at 506 (2002). However, she is required to "allege facts sufficient to claim that the [way the agency acted] was because of her race or sex." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015), *cert. denied,* 136 S. Ct. 1162 (2016). She must create a "reasonable inference" that the decision-makers were motivated by bias, *id.,* and that her supervisors took the

actions they did was because of "invidious discrimination." *Iqbal v. Ashcroft,* 556 U.S. 670, 677 (2009).

Courts have held that pleading a plausible case requires more than just averring that the employer acted on the basis of animus against a protected group. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002)(finding that a complaint of age and national original discrimination was sufficient because it "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination."); *See also McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.,* 780 F.3d 582, 586 (4th Cir. 2015), *cert. denied,* 136 S. Ct. 1162 (2016)("McCleary–Evans can only speculate that the persons hired were not better qualified, or did not perform better during their interviews, or were not better suited based on experience and personality for the positions . . . [her] complaint stop[ped] short of the line between possibility and plausibility of entitlement to relief.")(*internal citations omitted*).

The charges of discrimination in the present case can be grouped into two categories. First, with respect to her employment before she was transferred, Diggs alleges she was put on a leave restriction by her supervisors, denied training with respect to spreadsheets, and impersonated by her supervisors in their efforts to obtain more information about her ankle injury. ECF No. 1 at 5, 6. Second, with respect to the period following her transfer, she alleges that actions taken by her supervisors in the Human Services Division – including marking her Absent Without Leave ("AWOL"), issuing written "records of conversations," and annotating her leave slips – were discriminatory. Further, she avers that she suffered discrimination when she was terminated on October 15, 2008 (citing the fact that security escorted her out of the building) and when she was terminated and removed on June 9, 2009.

Whatever grievances Diggs may harbor as a result of her supervisors' alleged actions, however, she posits no plausible nexus between her race or sex and the challenged activities. With respect to the allegations of her supervisors' misconduct prior to her transfer, Diggs mentions the race and gender of only one other employee whom she alleges was treated more favorably than she – an Asian or Pacific Islander male – and suggests an alternative theory that the employee received preferential treatment because he was related to the supervisor. *See* ECF No. 1 at 6. But whatever this evidence may signify, it still demonstrates no animus against her based on her race or gender.

Nor does Digg provide sufficient facts as to the race or sex of her allegedly discriminatory supervisors (which would be highly relevant to suggesting animus on their part), nor does she indicate how other similarly situated employees of the same or other races or sex were treated. The Court finds Diggs' claims of race and gender discrimination implausible on their face and will accordingly dismiss them.

*ii.   Disability Discrimination*

To establish a *prima facie* case of disability discrimination under the RA, Diggs must show that "(1) [ ] [s]he has a disability; (2) [ ] [s]he is otherwise qualified for the employment or benefit in question; and (3) [ ] [s]he was excluded from the employment or benefit due to discrimination solely on the basis of the disability." *Doe v. Univ. of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995).

Diggs alleges that she "was denied [her] leave back after using [her] leave for [her] injury (ankle/foot) at work"; was charged with being AWOL even though she was under a doctor's care and even though she provided medical documentation to her supervisor; and was denied sick leave for July 11 and July 15, 2008. ECF No. 1 at 5. She also alleges that one of her supervisors

called the Department of Labor's Office of Workers' Compensation Programs and made inquiries with respect to her disability. *Id.* In her Reply, Diggs further states that she asked her supervisors that she be (1) allowed to move around during the day so that her foot would not get stiff, (2) provided a stool to elevate her foot, (3) permitted additional time off due to her injury, and (4) provided a ride to her car or a parking space closer to the entrance to the FEMA facility. ECF No. 23.

The Court will accept that Diggs has sufficiently pled that she had a cognizable "disability." In analyzing cases under the Rehabilitation Act, courts use the definition of disability set forth by the Americans with Disabilities Act, *Edmonson v. Potter*, 118 F. App'x 726, 728 (4th Cir. 2004), which provides that a disability is a "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102 (1)(A). A "major life activit[y]" includes "walking" and "standing," but not if an impairment is "transitory and minor," *i.e.*, an impairment with an actual or expected duration of six months or less. 42 U.S.C. § 12102 (3)(A). Diggs alleges that her ankle was first injured in April 2006, and continued to require medical attention in 2008. ECF No. 1 at 4—5.

However, Diggs has failed to allege that she was "otherwise qualified" to do her job. A "qualified individual" is one who "with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements" of the job. *Halpern v. Wake Forest Univ. Health Scis.,* 669 F.3d 454, 462 (4th Cir. 2012). A regular and reliable level of attendance is generally considered to be an essential function of most jobs. *Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994); *Walders v. Garrett*, 765 F. Supp. 303, 311 (E.D. Va. 1991), *aff'd*, 956 F.2d 1163 (4th Cir. 1992). Insofar as Diggs was irrefutably irregular and unreliable in her attendance, her disability claim falters. She has not plausibly alleged how any of the accommodations she

-10-

says she requested would have allowed her to attend work more often, nor meet the eligibility requirements of her job. Indeed, many of the accommodations she allegedly asked for were requests for additional leave. In the Court's view, as a matter of law, Diggs has failed to plead a plausible case of disability discrimination under the RA.

    iii.    Hostile Work Environment[5]

A hostile work environment exists in violation of Title VII when the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65 (1986). But these conditions – however unpleasant they may be – must always relate to illegal discrimination based on – in this case – race, gender, or disability. *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). Hostile work environment claims are also cognizable under the RA. *Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009).

To make out a *prima facie* case for hostile work environment under both Title VII and the RA, "a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her [race, sex, or disability] (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer." *Westmoreland v. Prince George's Cty., Md.*, 876 F. Supp. 2d 594, 614 (D. Md. 2012)(*quoting Hoyle v. Freightliner, LLC,* 650 F.3d 321, 331 (4th Cir.2011)). The hostility must be both objective and subjective; *i.e.*, it must be such that it "would reasonably be perceived [by

---

[5] Diggs speaks of "harassment" whereas Title VII speaks in terms of "hostile work environment." The Court assumes that is what she intends to claim.

a reasonable person], and is perceived [by Plaintiff], as hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

The Court will assume that whatever actions Diggs complains of were unwelcome. But nowhere does she elaborate further on what that harassment consisted of nor how it was in any way connected to her race, sex, or disability. Nor does she set forth who was responsible for the actions, or how severe or pervasive they were so as to alter the conditions of her employment and create a hostile work environment, nor indeed has she demonstrated that any such action is imputable to her employer. The Court clearly requires this information to be able to evaluate the plausibility of her claim. Hostility alone – untethered to alleged discrimination – is simply not actionable under Title VII. Kelly's Motion to Dismiss Diggs' claim of "harassment," which is to say "hostile work environment," will therefore be **GRANTED**.

### III.  MOTION FOR SUMMARY JUDGMENT

All that remains is the allegation of retaliation under Title VII.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. In order to prevail on a retaliation claim, Diggs must prove that (i) "that [she] engaged in protected activity," (ii) "that [her employer] took adverse action against [her]," and (iii) "that a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)(*quoting Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)). The burden then shifts to the employer to demonstrate a legitimate, non-retaliatory reason for the action, after which the

burden shifts back to the plaintiff to prove that the employer's proffered reason was pretextual. *Yashenko v. Harrah's NC Casino Co.,* 446 F.3d 541, 551 (4th Cir. 2006). The ultimate burden of proof is always on the complainant. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In considering a motion for summary judgment, a court must draw any inferences in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). However, "such a motion cannot be denied unless the non-moving party puts forth *specific* facts evidencing that such a genuine issue *does* exist." *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 951 (4th Cir. 1995); s*ee also Allstate Fin. Corp. v. Financorp, Inc.,* 934 F.2d 55, 58 (4th Cir. 1991). "If the non-movant fails to make a sufficient showing on an element on which he has the ultimate burden of proof, summary judgment is appropriate because there is no genuine issue of material fact due to the complete failure of proof on an essential element of the non-movant's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

In addition, the Supreme Court has held that a "plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2534 (2013).

The Court will assume Diggs has made a *prima facie* case of retaliation. She submits that she engaged in protected activity when she filed two EEO complaints – the first on July 14, 2008 and the second on March 18, 2009. ECF No. 1-2 at 1; *Burgess v. Bowen,* 466 F. App'x 272, 282 (4th Cir. 2012)(filing an EEO complaint is a protected activity). She sought and received informal counseling from an EEO counselor on August 28, 2008.

Diggs also has shown that Kelly took adverse actions against her, which is to say, actions that "adversely affected the terms, conditions, or benefits of plaintiff's employment." *Von Gunten v. Maryland,* 243 F.3d 858, 863(4th Cir. 2001)(*internal citations omitted*). It is well settled that suspension and termination are adverse employment actions. *See e.g. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). Diggs was suspended on May 14, 2009 for inappropriate conduct. She was then terminated on June 2, 2009 for failure to follow instructions, including refusing to meet with a supervisor about a credentialing exam she failed, raising her voice at coworkers and supervisors, and leaving meetings when supervisors were attempting to counsel her about her attendance issues. ECF No. 12-2 at 198-200.

However, Kelly's other actions cited in the Complaint – instituting a leave restriction, reassigning Diggs, charging her with being AWOL, issuing records of conversations, checking her worker's compensation status, escorting her out of the office as part of a suspension, and denying her training opportunities – were not adverse employment actions within the meaning of Title VII. *See e.g. Amirmokri v. Abraham,* 437 F.Supp.2d 414, 423 (D.Md.2006)(holding that reassignment of an employee and issuing a letter of reprimand are not adverse employment actions); *Spriggs v. Pub. Serv. Comm'n of Maryland*, 197 F. Supp. 2d 388, 397 (D. Md. 2002)(holding that charging an employee AWOL is not an adverse employment action); *Rock v. McHugh*, 819 F. Supp. 2d 456, 470 (D. Md. 2011)(holding that placing an employee on leave restriction and charging him AWOL are not adverse employment actions.).[6]

In some cases, a causal link between the adverse employment action and retaliation may be proven by demonstrating temporal proximity between the protected activity and the adverse employment action. In this case, Diggs filed Complaint 1 on July 15, 2008 and engaged in

---

[6] Nor is receiving an email thanking an employee for participating in a training she did not in fact attend, ECF No. 1 at 6, an "adverse employment action."

counseling on August 28, 2008. She was suspended on October 15, 2008. Her Notice of Suspension from Duty cited inappropriate actions that occurred on August 12 and September 3, 2008, ECF No. 12-2 at 206, as well as being AWOL on May 21, July 11, and July 15, 2008. *Id.* at 207. She filed Complaint 2 on March 11, 2009 and was terminated on June 2, 2009. Her Notice of Termination cited actions she took on April 7, 2009, April 14, 2009, May 7, 2009, and May 21, 2009. ECF No. 12-2 at 198. The Court accepts that this temporal proximity could support the finding of a causal link for the purposes of establishing a *prima facie* case. *See King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003)(holding that a two and a half month gap between protected activity and the adverse action sustains a *prima facie* case).

Knowledge of the protected activity on the part of the employers is also "necessary to establish causation," though it is not sufficient. *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.,* 160 F.3d 177, 182 (4th Cir. 1998). Diggs alleges that her supervisors knew of her prior EEO activity prior to suspending and terminating her. ECF No. 1 at 5. Indeed, some of Diggs' supervisors, if not all, admit to this knowledge.[7] So far, so good.

However, assuming Diggs has demonstrated a *prima facie* case of discrimination, the burden shifts to Kelly to demonstrate a legitimate, non-discriminatory reason or reasons for suspending and then terminating her. As noted above, with respect to her suspension, Kelly provided a written Notice of Suspension from Duty charging Diggs with multiple instances of inappropriate conduct as well as being AWOL. ECF No. 12-3 at 206. After an appeal and review, the AWOL charges were overturned and removed from the suspension notice, and the

---

[7] On the other hand, supervisor Michael Dickerson, ECF No. 12-3 at 58, who signed Diggs' Notice of Suspension and supervisor Josephine Elliot, *id.* at 133, who signed Diggs' Notice of Termination, both testified that they were unaware of her EEO activity when they took those actions.

suspension was reduced to three days. ECF No. 12-3 at 212. But the inappropriate conduct charge was affirmed. *Id.*

The inappropriate conduct charge centered around two incidents. First, on August 12, 2008, Diggs' manager approached her desk "to speak with [her] and remind [her] of a meeting that required [her] attendance." ECF No. 12-2 at 206. The supervisor alleged that Diggs responded in a curt tone. *Id.* In the second incident, Diggs apparently failed to attend a mandatory training course, raised her voice when approached by coworkers who inquired why she was not in the training, and ignored her supervisor when he asked her to meet with him and another supervisor about the incident. *Id.*

The written Notice of Termination charged Diggs with failure to follow instructions and cited five specific instances of misconduct. On April 7, 2009, she allegedly refused to meet with her supervisor, Doug Roberts, about a credentialing examination she took and failed. ECF No. 12-3 at 198. On April 14, 2009, when Roberts in a phone call again attempted to set up a meeting with her to discuss the outcome of her exam, Diggs raised her voice and eventually hung up on him. *Id.* at 198-99. On May 7, 2009, during a meeting with Roberts and another supervisor about her attendance issues, Diggs allegedly began shouting. *Id.* at 199. Finally, on May 21, 2009, when meeting with Roberts and another supervisor about recent instances of being AWOL, Diggs abruptly left, then returned and spoke in a raised voice about a different topic. *Id.* When Roberts asked her to lower her voice, she apparently left the room again. *Id.*

Kelly has proffered evidence that this type of argumentative, insubordinate behavior was typical of Diggs. Many of her supervisors during her tenure at FEMA testified to Diggs' consistent insubordination. *See e.g.* ECF No. 12-3 at 171 (Josephine Elliot); ECF No. 12-5 at 402

(Michael Dickerson); ECF No. 12-2 at 115 (Arthur Wilson). Indeed, such conduct was documented by Diggs' supervisors even before she filed her first EEO Complaint. *See* ECF No. 12-3 at 568. ("Shortly before 12:30 hours today, Thursday the 27th of September 2007, Beverly Diggs and Lynda Perry, both employees assigned to Mail Operations, became involved in a very loud verbal argument in the 6th floor mailroom . . . 10/26/2006 [Diggs] received written Reprimand for inappropriate and disruptive behavior . . .").

This conduct on Diggs' part was unquestionably contrary to the terms of the FEMA Employee Handbook, which provided that "[t]he conduct of employees reflects the qualities of courtesy, integrity, and loyalty to the United States . . . and a standard of personal behavior that reflects positively upon and will be a credit to both the employees and FEMA. You must carry out your assigned duties in accordance with Agency policies, procedures, and your supervisor's instructions." ECF No. 12-2 at 300.

Viewed as a whole, this evidence of Diggs' failure to follow instructions and continuous insubordination establishes a legitimate, non-discriminatory reason for Kelly's actions. But when the burden shifts back to Diggs to show that this proffered explanation was somehow a pretext for illegal discrimination based on race and/or gender and/or disability, Diggs, quite simply, is at a loss. Other than baldly asserting that her various supervisors knew about her EEO complaint, she provides no plausible theory as to how citing her disruptive behavior was pretextual for a race-base, gender-based, or disability-based action. It is not enough for Diggs to simply maintain that Kelly's assertions are not true and were fabricated in retaliation for her EEOC complaints.

In any event, Diggs does not really contest certain facts cited in her Notice of Suspension from Duty and Notice of Termination. For example, with respect to the first incident cited in the

Notice of Termination, she does not dispute that she refused to meet with Roberts on April 7, 2009, and avers instead that she asked to not meet with him alone because he had harassed her. ECF No. 12-3 at 44. When asked under oath at her EEOC hearing whether she refused to meet with him, she answered "in a way, in a way not." ECF No. 12-5 at 209.[8]

To repeat: Diggs' bare denials do not suffice to create triable questions and defeat summary judgment. *See Strag v. Bd. of Trustees, Craven Cmty. Coll.,* 55 F.3d 943, 951 (4th Cir. 1995). "Job performance . . . [is] widely recognized as valid, non-discriminatory bas[is] for any adverse employment decision." *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 960 (4th Cir. 1996). Diggs has provided no evidence that she was not disruptive other than her own account, which is insufficient as a matter of law. *Strag v. Bd. of Trustees,* 55 F.3d at 951; ECF No. 12-5 at 221—224. In contrast, not only has Kelly offered affidavits from Diggs' supervisors testifying to her inappropriate behavior, including contemporaneous notations in her personnel file of her insubordination; he has submitted several additional accounts of other inappropriate behavior on Diggs' part, including instances of inappropriate conduct that occurred before she filed her first EEOC complaint. Those earlier accounts belie the suggestion that Kelly's actions were in any way pretextual for illegal discrimination.

In sum, it is clear that Diggs' failure to follow instructions and her unremitting insubordination, as well as her frequent unscheduled absences and tardiness as to which she was clearly warned beforehand, were the true reasons for her suspension and eventual termination.

---

[8] Diggs does deny the other incidents in her Notice of Termination.

**IV.**

For the forgoing reasons, the Court will **GRANT** Kelly's Motion to Dismiss with respect to Diggs' claims of race discrimination, sex discrimination, and hostile work environment under Title VII; as to her disability discrimination claim under the RA; and as to her claim of violations under the FMLA.

The Court will **GRANT** Kelly's Alternative Motion for Summary Judgment with respect to Diggs' claims of retaliation under Title VII.

That disposes of all of Diggs' claims in the case.

The Clerk will be directed to **ENTER** Final Judgment in favor of the Defendant and **CLOSE** the case.

A separate Order will **ISSUE.**

                                                          /s/
                                **PETER J. MESSITTE**
                        **UNITED STATES DISTRICT JUDGE**

**March 23, 2017**